**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JOHN L. KUSLITS,**

                    Plaintiff,

v.                                   **Case No. 15-cv-1036-pp**

**J. ACHTERBERG,**
**G. STEINKE,**
**SGT. ANDERSSON, and**
**SGT. TEMPSKI,**

                    Defendants.

---

**DECISION AND ORDER SCREENING PLAINTIFF'S COMPLAINT**

---

John L. Kuslits, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was in the segregation unit at Stanley Correctional Institution. Dkt. No. 1. The case comes before the court for screening of the plaintiff's complaint. He paid the full filing fee on September 8, 2015.

    A.    <u>Standard for Screening Complaints</u>

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

1

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint, however, that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived the plaintiff of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Facts Alleged in the Complaint

The plaintiff alleges that he was housed in the segregation unit at Stanley Correctional Institution from May 1, 2014, to July 28, 2014. Dkt. No. 1 at 3. Beginning around June 15, 2014, the plaintiff's eyes became irritated, and the condition "grew persistently worse each day until it became unbearable." Id.

On June 30, 2014, the plaintiff submitted a request to the Health Services Unit (HSU). Id. A nurse treated the plaintiff on July 1, 2014. Id. She gave the plaintiff a small tube of ointment, and directed him to apply the ointment to his eyes four times a day for seven days straight. Id.

The plaintiff submitted another request to the HSU on July 10, 2014, because his eye problems had only gotten worse. Id. By that time, the plaintiff had a build-up of thick, sticky fluid in his eye sockets and was having difficulty seeing. Id. A nurse saw the plaintiff the same day. Id. at 4. She gave him a

3

bottle of baby shampoo and a handful of gauze to use as an eye scrub solution four times a day. Id. She said the pores of his eyelids were plugged. Id. The plaintiff applied the suggested treatment as prescribed from July 12, 2014, to July 17, 2014, but it did nothing to alleviate the plaintiff's condition. Id. The plaintiff woke up each morning with the same sticky fluid build-up in his eye sockets. Id. He had to begin each day by prying his eyes open after applying warm water and pressure. Id.

The plaintiff sent a new request to the HSU on July 17, 2014, that described his continuing problems with his eyes. Id. He also asked to be scheduled to see the eye doctor. Id.

Also on July 17, 2014, the plaintiff asked to be removed from his cell and escorted to the outside segregation unit recreation area. Id. The officer who removed the plaintiff from his cell asked the plaintiff was what wrong with his eyes, because he noticed the profound redness and irritation and the plaintiff's obvious discomfort. Id. On the way to the recreation area, the plaintiff told the officer about the problems he had been having with his eyes. Id.

When the plaintiff arrived at the recreation area, he almost immediately began to notice that his eyes felt better and were less irritated. Id. A little while later, the same guard escorted the plaintiff from the recreation area to the eye doctor. Id.

During the eye doctor's examination, the plaintiff mentioned that he was wondering if it could possibly be something in his cell that was causing the eye problems. Id. The plaintiff told the doctor that his eyes no longer felt irritated

4

after he was removed from his cell that morning. Id. The eye doctor diagnosed the plaintiff's eyes as inflamed, but he could not comment as to the cause of the inflammation. Id. The eye doctor prescribed steroid eye drops for the inflammation. Id. After this appointment, the plaintiff retuned to the recreation area for additional time outside. Id. The plaintiff experienced no irritation or discomfort in his eyes the entire time he was outside his cell. Id. at 5.

When the plaintiff returned to his cell, he looked in the mirror and his eyes were completely clear. Id. He took a brief nap after lunch, though, and his eyes were irritated again when he woke up. Id. The plaintiff attempted to write a few letters and do some reading, but his eyes were too irritated to do either. Id. The plaintiff had a shower the same day, and instantly felt relief from the irritation when he was removed from his cell. Id. The plaintiff also noticed that day that an inmate worker entered the plaintiff's cell and did a cursory mopping of the cell floor. Id.

The plaintiff decided on the way back from the shower to attempt to clean his cell as well as he could using his hair shampoo and his state-issued face cloth. Id. The plaintiff used these items because a policy in the segregation unit precluded the distribution of cleaning supplies, specifically cleaning rags, to inmates in segregation. Id. The only time inmates in segregation got cleaning supplies while the plaintiff was there was one day a week on Sundays. Id.

The plaintiff began cleaning the floor of his cell on his hands and knees. Id. He noticed "a blackish-green mold along the floor, directly below the window area inside the cell where the bottom of the wall and the floor intersected." Id.

5

Each time it rained, water would flow into the cell through the sides and bottom of that window. Id.

The plaintiff also discovered "a bulbous-spongy-looking-black-sack" under the steel bunk he slept on, in the corner of the wall. Id. at 5-6. When he tried to pick it up with his face cloth, "it burst open and a foul-smelling stench filled the air, that was so strong that it made [him] gag and nearly vomit, and whereupon [his] eyes instantly became irritated and began to water up." Id. at 6. After using almost an entire roll of toilet paper, the plaintiff was able to pick up the burst sack piece by piece from underneath the steel bunk and flush it down the toilet. Id.

The plaintiff continued cleaning the walls and floor area underneath the steel bunk and found "large amounts of dust, dirt, food particles, and human feces stuck on the walls and caked up in the corner of the floor and on the walls below and behind the bunk." Id. The plaintiff cleaned up as well as he could with his state-issued face cloth. Id.

After cleaning his cell, the plaintiff no longer woke up with the sticky-mucous-like substance caked over his eyes. Id. However, since being released from segregation, the plaintiff has been experiencing the same kind of blurred vision, headaches, and spells of dizziness that accompanied his other physical symptoms when he was exposed to the unsanitary conditions in his cell in the segregation unit. Id. He had never had these kinds of symptoms before his time in the segregation unit. Id.

6

The plaintiff asserts that his eye problems and his ongoing symptoms are a direct result of the unsanitary conditions and deficient cleaning policies in the segregation unit at Stanley Correctional Institution. Id. He bases his claims on the Eighth Amendment and various Wisconsin statutes regarding the maintenance of jails and the care of prisoners. Id. at 7-8. He seeks declaratory relief and damages, as well as reasonable attorney fees and costs and other just and equitable relief this court may deem necessary. Id. at 9.

C. Legal Analysis of Alleged Facts

Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346 (1981); see also James v. Milwaukee Cnty., 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1994); see also Wilson v. Seiter, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded the contemporary bounds of decency of a mature civilized society. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. Rhodes, 452 U.S. at 347. A combination of conditions may violate the Eighth Amendment if they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human

7

need." See Budd v. Motley, 711 F.3d 840, 842 (7th Cir. 2013) (quoting Wilson, 501 U.S. at 304); see also Thomas v. Illinois, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm).

The court concludes that the combination of the plaintiff's description of the mold and the bulbous sack he discovered under his bunk, and his descriptions of his eye problems (particularly the relationship of their severity to the times he was out of his cell, and the time after he cleaned the cell) are sufficient at this stage to satisfy the objective portion of an Eighth Amendment claim. In other words, he has alleged facts sufficient to demonstrate that the conditions in his cell deprived him of a basic human need—an environment which did not make him ill.

The subjective component of unconstitutional punishment focuses on the intent with which the acts or practices constituting the alleged punishment are inflicted; in other words, the state of mind of the defendant. Jackson, 955 F.2d at 22. "The minimum intent required is 'actual knowledge of impending harm easily preventable.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985)) (emphasis in Jackson). "A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm." Jackson, 955 F.2d at 22. However, "[if] the harm is remote rather than immediate, or the officials don't know about it or can't do anything about it, the subjective component is not established and the suit fails." Id.

8

This is where the plaintiff's complaint encounters trouble. He has not alleged any personal involvement by any of the named defendants. He does not name any of the nurses or doctors who saw him. He does not name the officer who noticed his eye redness, and to whom he described his symptoms. He has not indicated how any of the defendants he has named—Achterberg, Steinke, Anderson, or Tempski—were deliberately indifferent to the condition of the plaintiff's cell; he does not state whether any of these four knew of his situation, or had reason to know. He does not state whether any of them did, or did not do, anything about his condition if they did know. Accordingly, the plaintiff's complaint does not state individual capacity claims against the named defendants.

The plaintiff submits that the constitutional violation stemmed from the deficient cleaning policies in the segregation unit. Dkt. No. 1 at 6. This claim constitutes an official capacity claim against the named defendants in their roles as security director, captain and sergeants.

The official capacity claims raise questions about the kinds of damages the plaintiff may seek. "To the extent [a plaintiff] seeks monetary damages from defendants acting in their official capacity, those claims . . . are dismissed as they are barred by the Eleventh Amendment." Brown v. Budz, 398 F.3d 904, 917-18 (7th Cir. 2005); see also Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011). The court will dismiss any claims for monetary damages against the four defendants. The plaintiff's complaint contains no claims for injunctive relief, even though it is available on official capacity claims. The complaint

9

does, however, seek declaratory relief; the plaintiff asks the court to declare that the events he describes in the complaint constitute violations of his rights under the United States and Wisconsin constitutions. Accordingly, the court finds that the plaintiff may proceed on Eighth Amendment conditions of confinement official capacity claims against the defendants for declaratory relief only.

The plaintiff also alleged that the defendants (or their policy) violated several subsections of Chapter 302 of the Wisconsin Statutes, which addresses prisons. Dkt. No. 1 at 8. There is, however, is no private cause of action to address violations of those statutory provisions. The court finds that the plaintiff may not proceed on state law claims.

As a final note, the court observes that venue may not be proper in this court. Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Stanley Correctional Institution, which is where the events giving rise to the plaintiff's complaint occurred, is located in the Western District of Wisconsin, and the defendants all are employed there. Perhaps one or more of the defendants may reside in this district; the court does not know. But there are

10

indications that the proper venue may be the Western District of Wisconsin (in Madison), rather than the Eastern District (in Milwaukee). Because the court does not have sufficient evidence on all of the venue factors at this early stage of the case, the court will not take any action on venue at this time. The parties may raise it at a later date, if they think it appropriate.

    D.    Conclusion

The court **ALLOWS** the plaintiff to proceed on official capacity claims against the defendants under the Eighth Amendment that deficient cleaning policies in the segregation unit at Stanley Correctional Institution led to the violation of his constitutional rights. The court **ORDERS** that the plaintiff may proceed on these claims only as to his request for declaratory relief.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

        Office of the Clerk
        United States District Court
        Eastern District of Wisconsin
        362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Each filing will be electronically scanned and entered on the docket upon receipt by the clerk so the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 17th day of February, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge